IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 20-cv-002093-LTB

A.E.,

      Plaintiff,

v.

KILOLO KIJAKAZI, Acting Commissioner of Social Security,


      Defendant.

_____

ORDER
_____

Plaintiff, A.E., appeals from the final decision of the Social Security

Administration ("SSA") Commissioner denying her application for disability

insurance benefits, filed pursuant to Title II of the Social Security Act 42 U.S.C.

§401, *et. seq.,* and her application for supplemental security income, filed pursuant

to Title XVI of the Social Security Act 42 U.S.C. §1381 *et. seq.* Jurisdiction is proper

pursuant to 42 U.S.C. §405(g). Oral argument would not materially assist me in the

determination of this appeal. After consideration of the parties' briefs, as well as the

administrative record, I REVERSE the Commissioner's order, and REMAND for

further proceedings.

## I. STATEMENT OF THE CASE

Plaintiff seeks judicial review of the Commissioner's decision denying her

application for disability insurance benefits and her application for supplemental

security income, both filed on March 25, 2014. [Administrative Record at Doc #14 "AR" 434, 438] After her applications were initially denied [AR 144], an Administrative Law Judge ("ALJ") held an evidentiary hearing on July 7, 2017 [AR 75-88], and thereafter issued a written ruling denying Plaintiff's applications on July 24, 2017. [AR 150-59] The SSA Appeals Council subsequently remanded with directions that the ALJ clarify the effect of the assessed limitation on Plaintiff's occupational base, and to determine whether Plaintiff had acquired any skills that are transferrable to other occupations. [AR 167-68]

On January 9, 2020, after another hearing on December 11, 2019 [AR 46-64], the ALJ again denied Plaintiff's applications on the basis that she was not disabled from November 15, 2013 (the date of a previous administrative decision) through the date of the ALJ's decision, because she was able to perform work existing in significant numbers in the national economy considering her age, education, work experience and her assessed residual functional capacity (Step Five). [AR 15-33] The SSA Appeals Council subsequently denied Plaintiff's administrative request for review of the ALJ's determination making the Commissioner's decision final on May 13, 2020. [AR 1-6] Plaintiff timely filed her complaint with this court seeking review of the Commissioner's final decision on July 17, 2020.  [Doc #1]

## II. FACTS

Plaintiff's date of birth is April 14, 1966. [AR 31, 111] She was forty-four years old on March 10, 2011, her alleged onset date, and was fifty-three at the time of the ALJ's decision in this case. [AR 31] Plaintiff has at least a high school

education, and she communicates in English. [AR 31, 503] Her prior employment

history includes work as a residential counselor and as a detention officer. [AR 31,

49-50]

Plaintiff alleges that she became disabled due to the limiting effects of:

problems in her right arm, hand, and wrist; widespread pain symptoms; depression;

and anxiety. [AR 111, 128] In her functional report dated March 25, 2014 [AR 490-

96], Plaintiff alleged difficulty with lifting, bending, standing, walking, sitting,

kneeling, climbing stairs, using her hands, and with her memory. [AR 495] She

reported that she could not lift more than 10 pounds or walk more than a city block.

[AR 495] She further reported that she could not finish what she started, and that

she could not handle stress or changes in routine well. [AR 495-96]

As to Plaintiff's physical impairments, the ALJ found that Plaintiff suffered

from the severe impairments of degenerative disc disease of the lumbar spine,

systematic lupus, and status post open reduction internal fixation (ORIF) of a right

radial-ulnar fracture (wrist), which he considered in combined effect with Plaintiff's

obesity. The ALJ further found that Plaintiff's other alleged impairments –

including chronic obstructive pulmonary disease (COPD), degenerative disc disease

of the cervical and thoracic spine, mild degenerative joint disease of the shoulders,

and left knee pain – "have caused only transient and mild symptoms and

limitations, are well controlled with treatment, have not met the 12-month-

durational requirement, or are otherwise not adequately supported by the medical

evidence in the record." [AR 18] I note that because the ALJ ruled that a previous decision of non-disability had *res judicata* effect, and thus the ALJ only considered whether Plaintiff was disabled after November 2013, I likewise rely on the record evidence post-dating the prior decision. [AR 15]

On July 18, 2014, Nancy C. Cutter M.D. examined Plaintiff at the Commissioner's request. [AR 664-72] Dr. Cutter found that Plaintiff had normal ranges of motion without discomfort, including in her wrist; no tenderness to her spine; and full (5/5) strength. [AR 669-70] Dr. Cutter opined that Plaintiff had no limits in sitting, standing, or walking; could continuously lift up to 10 pounds and occasionally lift up to 20 pounds. [AR 671-72] She found reduced range of motion on Plaintiff's right wrist, and opined that her manipulative functions were limited to a range of "occasional to frequent [use] on that side." [AR 672]

On August 8, 2014, the Commissioner's single decision maker, Jeffrey Witkins, opined that Plaintiff could lift twenty pounds, spend six hours each of sitting, standing, and walking in a workday, and could frequently handle and finger with her right upper extremity. [AR 138-39]

On September 10, 2014, Plaintiff began seeing Debra Rice, a nurse practitioner at SoCo Medical Services, for pain management. [AR 759] On examination, Plaintiff had abnormally high muscle tone (hypertonicity) and tenderness, but normal muscle strength, normal movement of all extremities, normal gait and station, and normal reflexes. [AR 762] Plaintiff saw Ms. Rice

through March of 2016. [AR 701-59]

Plaintiff served a sentence of imprisonment from July 2016 to October 2017, where she received some treatment for headaches and various other minor pains while incarcerated. [AR 786-879]

On October 18, 2017, Plaintiff established care with Bridget Lee, a nurse practitioner at the Hanson Clinic, for hand, knee, leg, and foot pain. [AR 1016-17] On October 30, 2017, Plaintiff requested a Med-9 form from Ms. Lee seeking temporary benefits for a disability lasting up to 12 months. [AR 1012-14] Plaintiff continued to see Ms. Lee and Amanda Fadenrecht, another nurse practitioner at the Hanson Clinic, through July of 2018. [AR 998-1045]

In June of 2018, Plaintiff began seeing Patrick Timms M.D., a rheumatologist at the Southern Colorado Clinic. [AR 897-98, 1075-78] Dr. Timms' initial examination on June 6, 2018, was normal, except for "synovitis in the wrists, metacarpophalangeal joints and proximal interphalangeal joints" and a possible lupus diagnosis. [AR 1075-76] On her visit on March 5, 2019, Dr. Timms diagnosed Plaintiff with lupus. [AR 1078]

In October of 2018, Plaintiff established care with a family practice group at the Southern Colorado Clinic. [AR 1054-66] During Plaintiff's visit on March 18, 2019, nurse practitioner James Archuleta indicated, based on his review of the physical therapy records, that he did not "see there is any obvious reasons why she cannot perform job duties including sitting, walking, stairs [and] carrying things

5

less than 25 pounds." [AR 1139]

In November of 2018, Plaintiff established care with Peter Sykora D.O., a pain management specialist. At her initial examination on November 8, 2018, Dr. Sykora opined that Plaintiff had findings suggestive of only mild arthritis in her back, and noted that her urine screen was negative for her prescribed narcotic. [AR 1061] On December 11, 2018, Dr. Sykora found that x-rays of Plaintiff's shoulder and knee were "unimpressive," and he indicated that he was unsure "of the exact cause and extent of her subjective pain." [AR 1084] At her March and June 2019 visits, Dr. Sykora observed that Plaintiff "continue[d] to report moderate to severe pain despite any good objective evidence of [an] underlying problem." [AR 1089, 1288, 1293] On October 17, 2019, Plaintiff's urine drug screen was again "negative for any pain medications," and Dr. Sykora "lost trust in her taking these medications as prescribed" so he discharged her from treatment. [AR 1284-85]

On March 19, 2019, Robert Bogart D.O. examined Plaintiff at the Commissioner's request. [AR 1166, 1173] Upon examination, Dr. Bogart observed that Plaintiff had a normal gait, and had at most mild discomfort with back range of motion with "questionable effort." [AR 1171] She was also "overly dramati[c]" when her spine was palpated, and she had normal strength, including grip strength. [AR 1171-72] Dr. Bogart opined that Plaintiff could sit four hours per day, stand one to two hours per day, walk two to three hours per day, and lift up to 20 pounds. [AR 1172-73]

On May 17, 2019, Dr. Timms completed a form indicating that he was treating Plaintiff for systemic lupus. [AR 1098-100] Dr. Timms opined that the maximum amount Plaintiff could lift/carry for up to one-third of an eight hour workday was less than five pounds, and that she could sit for 30 minutes and be on her feet 15 minutes of an hour. [AR 1098] She could never stoop, squat, crawl or kneel. [AR 1099] In addition, he opined that she could only rarely reach, seldom handle, and occasionally finger. [AR 1100]

As to Plaintiff's mental impairments, the ALJ found that Plaintiff had a history of: depressive disorder; anxiety disorder; somatic symptom disorder; and trauma and/or stressor related disorder. [AR 25]

On July 22, 2014, Immaculate Wesley Psy.D. examined Plaintiff at the request of the Commissioner. [AR 656-60] Dr. Wesley found Plaintiff's thought processes were "extremely tangential and rambling"; she remembered 4/5 items immediately, but only 1/5 items after a delay, and she was unable to perform serial sevens -- i.e., count back from 100 by sevens -- as her first response was "102." [AR 659] Plaintiff reported that the sun rose in the south, and did not know how many weeks there were in a year. [AR 659] Dr. Wesley concluded that Plaintiff's "abilities as related to basic work activities appear extremely impaired and most likely precluded." [AR 660]

The Commissioner's single decision maker, Ellen Ryan M.D., found on August 20, 2014, that Plaintiff could do work of limited complexity requiring up to

three months to learn. [AR 140-41]

In January of 2018, Plaintiff established care with Parkview Behavioral Services. [AR 1101-08] At her initial appointment on January 4, 2018, Plaintiff reported that she was anxious and depressed, but it was noted that she had coherent speech, fair insight and judgment, and above average intelligence. [AR 1106] Plaintiff returned "seeking medications" on March 22, 2018, and when she was told she would have to ask for pain medications from her primary care provider, she left. [AR 1101] The record does not indicate any further treatment from Parkview Behavioral Services.

Plaintiff was examined by David Benson Ph.D., on March 15, 2019, at the Commissioner's request. [AR 1157-161] Dr. Benson's diagnostic impression was Depressive Disorder, NOS, and Anxiety Disorder, NOS. [AR 1162] Dr. Benson indicated that Plaintiff was friendly, spoke coherently, and had organized thoughts. [AR 1160-61] She remembered 4/5 words immediately and again after a five-minute delay. [AR 1161] Dr. Benson opined that Plaintiff had mostly mild functional limitations, except that she had a moderate limitation in understanding, remembering, carrying out, and making judgments on complex decision. [AR 1162] He also opined that she was moderately limited in responding appropriately to usual work situations and changes in a routine work setting. [AR 1162]

Plaintiff testified at her hearing on December 11, 2019, that she stopped working in 2011, but that she became unable to work due to car accidents in 2008

and 2009. [AR 49, 51] She testified that she injured her wrist and knee, and was also diagnosed with osteo-arthritis and fibromyalgia. [AR 51-52] She further testified that she could lift three pounds with both her hands together, and she could type for only a minute at a time because of her wrist injury. [AR 53-54] She also testified she had back problems due to her car accident and as a result had to alternate between sitting and standing. [AR 55]  Finally, she testified that she had bi-polar disorder, anxiety, depression, and lupus [AR 56, 58, 60], and that her mental health issues affected her memory and resulted in mood swings. [AR 58]

## III. LAW

A five-step sequential evaluation process is used to determine whether a claimant is disabled under the Social Security Act, which is generally defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §1382c(a)(3)(B); *see also Bowen v. Yuckert*, 482 U.S. 137, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).

The sequential evaluation process used to determine whether a claimant is disabled starts with Step One, which is a determination of whether the claimant is presently engaged in substantial gainful activity. If she is, disability benefits are denied. *See* 20 C.F.R. §§404.1520, 416.920. Step Two is a determination of whether the claimant has a medically severe impairment or combination of impairments as

governed by 20 C.F.R. §404.1520(c) and §416.920(c). If the claimant is unable to show that her impairment(s) would have more than a minimal effect on her ability to do basic work activities, she is not eligible for disability benefits. Step Three determines whether the impairment is equivalent to one of a number of listed impairments deemed to be so severe as to preclude substantial gainful employment. *See* 20 C.F.R. §§404.1520(d), 416.920(d). If the impairment is not listed, she is not presumed to be conclusively disabled. Step Four then requires the claimant to show that her impairment(s) and assessed residual functional capacity ("RFC") prevent her from performing work that she has performed in the past. If the claimant is able to perform her previous work, the claimant is not disabled. *See* 20 C.F.R. §§404.1520 (e)&(f), 416.920(e)&(f)

Finally, if the claimant establishes a *prima facie* case of disability based on the four steps as discussed, the analysis proceeds to Step Five where the SSA Commissioner has the burden to demonstrate that the claimant has the RFC to perform other work in the national economy in view of her age, education and work experience. *See* 20 C.F.R. §§404.1520(g), 416.920(g).

## IV. ALJ's RULING

The ALJ here found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of March 10, 2011 (Step One). [AR 18] The ALJ further ruled that Plaintiff had the severe impairments of: degenerative disc disease of the lumbar spine; systematic lupus; status post open reduction internal fixation

10

(ORIF) of a right radial-ulnar fracture; depressive disorder; and anxiety disorder (Step Two). [AR 18] The ALJ concluded, however, that these impairments did not meet or medically equal a listed impairment deemed to be so severe as to preclude substantial gainful employment (Step Three). [AR 19]

The ALJ then determined that Plaintiff retained the residual functional capacity (RFC) to perform light work, except she was limited as follows: she could occasionally bend, squat, and kneel; she could frequently, but not constantly, handle, finger, grip, and grasp; she could not perform any over chest level work; and she could not have any exposure to temperature extremes. In addition, the ALJ limited Plaintiff to jobs of SVP two or less with a GED and with a reasoning level of two or less. [AR 23]

Based on this assessed RFC, the ALJ found that Plaintiff was unable to perform any of her past relevant work (Step Four). [AR 31] However, the ALJ went on to find that Plaintiff could perform work existing in significant numbers in the national economy considering her age, education, work experience and assessed RFC, such as: furniture rental consultant, routing clerk, and marketing clerk. (Step Five). [AR 32] As a result, the ALJ concluded that Plaintiff was not disabled at Step Five of the sequential process. [AR 33]

## V. STANDARD OF REVIEW

This court's review is limited to whether the final decision is supported by substantial evidence in the record as a whole and whether the correct legal

standards were applied. *Williamson v. Barnhart,* 350 F.3d 1097, 1098 (10th Cir. 2003); *White v. Barnhart,* 287 F.3d 903, 905 (10th Cir. 2001); *Qualls v. Apfel,* 206 F.3d 1368, 1371 (10th Cir. 2000). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Kidd v. Comm'r, SSA,* No. 21-1363, 2022 WL 3041097 (10th Cir. Aug. 2, 2022)(unpublished)(quoting *Lax v. Astrue,* 489 F.3d 1080, 1084 (10th Cir. 2007)). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill,* ___ U.S. ___, 139 S. Ct. 1148, 1154, 203 L.Ed.2d 504 (2019). Reviewing courts "consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but we will not reweigh the evidence or substitute our judgment for the Commissioner's." *Lax v. Astrue, supra,* 489 F.3d at 1084; *see also Casias v. Secretary of Health & Human Servs.,* 933 F.2d 799, 800 (10th Cir. 1991). "The failure to apply proper legal standards may, under the appropriate circumstances, be sufficient grounds for reversal independent of the substantial evidence analysis." *Kidd v. Comm'r, supra* (quoting *Hendron v. Colvin,* 767 F.3d 951, 954 (10th Cir. 2014)); *Winfrey v. Chater,* 92 F.3d 1017, 1019 (10th Cir. 1996)(ruling that reversal may be appropriate when the SSA Commissioner either applies an incorrect legal standard or fails to demonstrate reliance on the correct legal standards).

## VI. ANALYSIS

On appeal, Plaintiff asserts that the ALJ erred when determining her

residual function capacity ("RFC"). An RFC is defined as the most a claimant can do notwithstanding any impairment related functional limitation. 20 C.F.R. §§404.1545(a)(1), 416.945(a)(1). Specifically, Plaintiff contends that the ALJ erred when assessing the medical opinions in the record related to her physical and mental limitations on her ability to work.

When determining a claimant's RFC, the ALJ considers opinion evidence from all acceptable medical sources. 20 C.F.R. §§404.1527, 416.927; *see also Keyes-Zachary v. Astrue,* 695 F.3d 1156, 1161 (10th Cir. 2012)(indicating that an ALJ must consider every medical opinion and discuss the weight he or she assigns to the opinion). Because Plaintiff filed her applications prior to March 27, 2017, the applicable procedures for the ALJ's evaluation of opinion evidence is governed by the "old" regulations found at 20 C.F.R. §404.1527 and §416.927. Under the old regulations, the amount of deference due to an opinion about a claimant's impairments varies depending on its source. "[T]he opinions of physicians who have seen a claimant over a period of time for purposes of treatment are given more weight over the views of consulting physicians or those who only review the medical records and never examine the claimant." *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004)(quoting *Williams v. Bowen*, 844 F.2d 748, 757 (10th Cir. 1988)); see also Social Security Ruling ("SSR") 96-6p; 20 C.F.R. §§404.1527(d)(1)&(2), 416.927(d)(1)&(2). Thus, the opinion of a consulting physician who has examined the claimant is generally entitled to less weight than that of a

treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all. *Id.*

## A. Treating Physician

In this case the ALJ gave "little weight" to Dr. Timms' opinion that Plaintiff could lift and carry less than five pounds, sit for four hours, stand and walk for two hours, as well as that she could never stoop, squat, crawl or kneel, and could only rarely reach, seldom handle, and occasionally finger. [AR 1098-100] In so doing, the ALJ found that:

> The evidence of record is not consistent with the opinion of Dr. Timms. For example, on July 18, 2014, Dr. Cutter noted that the claimant was able to stand on heel and toes and that her ambulation did not appear antalgic or ataxic. Dr. Cutter found a slightly reduced range of motion in the right wrist, but also found a normal range of motion throughout the entire spine and all other joints without discernable discomfort, no tenderness in the spine or paraspinal areas, negative straight leg raises, and normal strength, sensation, and reflexes. On March 10, 2016, Ms. Rice continued the claimant's Lyrica and noted that she tolerated it well. On June 29, 2018, the claimant noted that she was doing well so far on Plaquenil, Tramadol, and Percocet.  On October 10, 2018, Dr. Timms noted that the claimant's lupus was stable. By June 11, 2019, the claimant reported good pain relief with her medication regimen. By September 10, 2019, Dr. Timms found normal deep tendon reflexes and normal sensory, motor, and cerebellar functions. Finally, on October 17, 2019, the claimant again reported good pain relief with her medication regimen and noted that seeing a psychologist for her emotional issues was helping with her pain symptoms. Accordingly, the undersigned gives little weight to the opinion of Dr. Timms. [AR 29]

Plaintiff argues that the ALJ did not properly weigh Dr. Timms' opinion. She first notes that Dr. Timms examined Plaintiff three times in 2018, and one time in 2019, and that he provided treatment and obtained lab studies. [AR 1281-1301] As such,

she asserts that the ALJ erred in failing to identify and analyze his opinion as that of a treating physician.

The Commissioner does not dispute that Dr. Timms' opinion is from a treating physician. Instead, it argues that the ALJ's decision to give Dr. Timms' opinion "little weight" does not constitute error because it was inconsistent with the medical evidence in the record. The Commissioner maintains that although the ALJ did not specifically indicate whether Dr. Timms was a treating physician, the ALJ's order was clear that he did not give the opinion controlling weight, but instead rejected the opinion on the basis that it was not consistent with the objective medical evidence. *See Mays v. Colvin*, 739 F.3d 569, 575 (10th Cir. 2014)(declining to reverse because although the ALJ did not expressly state whether he had given a treating doctor's opinion controlling weight, the decision "implicitly declined" to do so). The Commissioner further argues that "the fact that Dr. Timms' opinion was inconsistent with the record was also a factor that the ALJ appropriately relied upon [when] finding Dr. Timms' opinion [was] entitled to little weight" [Doc #17 pg. 20], citing *Jones v. Colvin*, 610 F.App'x 755, 757 (10th Cir. 2015)(unpublished). Finally, because Plaintiff does not challenge whether Dr. Timms' opinion was inconsistent with the evidence of record as a whole, the Commissioner maintains that Plaintiff's "technical argument" should be rejected as it does not "challenge the actual substance of the ALJ's decision." [Doc #17 pg. 21]

Under the regulations for weighing opinion evidence applicable in this case,

15

an ALJ should "[g]enerally . . . give more weight to opinions from [a claimant's] treating sources." 20 C.F.R. §§404.1527(c)(2), 416.927(c)(2). In deciding how much weight to give a treating source opinion, an ALJ must complete a two-step inquiry. *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). The first step of the inquiry requires the ALJ to determine whether the opinion qualifies for "controlling weight." *Id.* An opinion from a treating source is entitled to controlling weight if it is both "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and consistent with other substantial evidence in the record. *Id.*; *see also* SSR 96-2p.

Even if not entitled to controlling weight, a treating source's opinion "is still entitled to deference" under the second step of the inquiry. *Krauser v. Astrue, supra*, 638 F.3d at 1330. The amount of deference due depends on weighing the following factors: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Id.* (citing 20 C.F.R. §§404.1527(c), 416.927(c)). While the ALJ need not explicitly discuss each individual factor, *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir.

2007), the ALJ must "give good reasons in the notice of determination or decision for the weight he ultimately assigns the opinion." *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003). An ALJ may dismiss or discount an opinion from a treating source if he or she provides "specific, legitimate reasons" for the rejection. *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012).

While it appears to be undisputed that the evidence is sufficient for the ALJ to decline to give Dr. Timms' opinion controlling weight at the first step of the inquiry, because it was inconsistent with other substantial evidence in the record, the order is absent of any analysis as to the deference given to the opinion by applying the factors set out in 20 C.F.R. §404.1527(c) and §416.927(c) at the second step of the inquiry. The ALJ's order does not discuss the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; or whether Dr. Timms was a specialist in the area upon which his opinion was rendered. Although the order states that "[t]he undersigned also considered opinion evidence in accordance with the requirements of 20 C.F.R. §§404.1527 and 416.927" [AR 23], it does not set out or apply the applicable test or factors used to weigh the opinion evidence beyond this cursory declaration. As such, I find that the ALJ's failure to address and consider what lesser weight Dr. Timms' opinion should be given at the second step of the inquiry, via discussion of the relevant factors set forth in 20 C.F.R. §404.1527(c) and

17

§416.927(c), constitutes error to be addressed on remand. *Krauser v. Astrue*, 638 F.3d 1324, 1330-31 (10th Cir. 2011)(noting that while "a deficiency as to the conditions for controlling weight raises the question of how much weight to give the opinion, it does not resolve the latter, distinct inquiry").

In so ruling, I reject the Commissioner's argument that the ALJ's assessment of Dr. Timms' opinion does not constitute error based on the ALJ's extensive and supported ruling that the evidence of record was inconsistent with his opinion. [Doc #17 pg. 21] I agree that the ALJ's finding that Dr. Timms' opinion was not consistent with other evidence could have been a factor that the ALJ relied upon in finding Dr. Timms' opinion entitled to little weight when determining the amount of deference to give his opinion. [Doc # 17 pg. 20] However, while the facts related to whether the opinion was entitled to controlling weight at the first step may certainly be relevant for an assessment of the factors related to the amount of deference due at the second step, an ALJ must address both steps when weighing the opinion of a treating physician. *Jones v. Colvin, supra*, 610 F.App'x at 759 (ruling that because the ALJ specifically made findings related to the factors underlying the amount of deference he gave when assessing the opinion's weight, including the physician's specialty, the length of treatment of the claimant, and the frequency of treatment of the claimant, the court found the ALJ properly assessed the treating physician's opinion by completing both phases of the analysis); *see also Coast v. Astrue*, No. 12-CV-02887-RBJ, 2014 WL 5441198 (D. Colo. Oct. 27,

18

2014)(unpublished)(rejecting the Commissioner's argument that the ALJ's assessment of whether the treating physician's opinion was consistent with the record as a whole was a sufficient consideration of the factors after concluding that the opinion was not entitled to controlling weight); *with Mays v. Colvin, supra*, 739 F.3d at 576 (ruling that the ALJ properly weighed a treating doctor's opinion based on the relevant factors when the ALJ listed the factors, recognized the doctor was a treating physician, discussed his treating records going back several years, and addressed whether the opinion was consistent with the record). Here, the ALJ failed to find whether Dr. Timms' was a treating physician, and to set forth the applicable law regarding the steps and factors used to weigh a treating doctor's medical opinion.  The ALJ also did not apply the regulatory scheme when ruling that Dr. Timms' opinion was entitled to little weight.  As such, I find that the ALJ failed to follow the rules of law governing how to weigh the opinion of Dr. Timms. *See Lax v. Astrue, supra*, 489 F.3d at 1084.

## B. Consultive Physicians

Plaintiff also argues on appeal that the ALJ erred when assessing the opinions of the consultive physicians. On remand, I direct the ALJ to consider and address the following arguments made by Plaintiff.

With regard to the physical examining consultants, Plaintiff argues that the ALJ gave Dr. Cutter's opinion "significant" weight – including, presumptively, that Plaintiff's manipulation on her right side was "limited to occasional to frequent" [AR

672] – but the ALJ determined that Plaintiff could "frequently, but not constantly handle, finger, grip and grasp" without addressing why he chose the high end of the range (from occasional to frequent on her right side) as opined by Dr. Cutter. [AR 23] Plaintiff also argues that the ALJ erred in that his order was not sufficiently specific to make it clear as to why he gave Dr. Bogart's opinion only "some" weight after finding that his opinion was generally consistent with the evidence, and then did not explain the reasoning for accepting some of Dr. Bogart's opinions while discrediting others.

As to the opinions from consultive examiners with regard to Plaintiff's mental restrictions, Plaintiff argues that the ALJ erred when giving Dr. Benson's opinion "significant" weight, but then not accepting his opinion that Plaintiff was moderately limited in her ability to respond appropriately to usual work situations and changes. In addition, Plaintiff contends that the ALJ erred when giving Dr. Wesley's opinion "little" weight when there is nothing in the order indicating that the ALJ considered any other factors beyond that Dr. Wesley's opinion conflicted with other evidence in the record.

## VII. CONCLUSION

Based on the foregoing, I find that the ALJ's failure to indicate that he considered the relevant factors, set forth in 20 C.F.R. §404.1527(c) and §416.927(c), when deciding what weight to give  Dr. Timms' treating opinion constitutes error requiring remand. *See Langley v. Barnhart*, 373 F.3d 1116, 1120-21 (10th Cir.

2004)(finding error where the ALJ "completely rejected" a treating physician's opinion once he determined it was not entitled to controlling weight, "without any consideration of what lesser weight the opinion should be given or discussion of the relevant factors..."); *Holt v. Saul*, 416 F. Supp.3d 1234, 1242 (D. Colo. 2019)(ruling that the ALJ's decision to give little weight to a treating physician constituted reversable error when the order: did not indicate that she gave any deference to the opinion; did not state whether she rejected the opinion outright; and did not provide good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned); *Andersen v. Astrue*, 319 F.App'x 712, 722 (10th Cir. 2009)(unpublished)(indicating that the apparent failure to consider any factor other than whether the opinion was supported by the record makes the ALJ's reasoning insufficient).

On remand, I direct the ALJ to assess Plaintiff's additional claims of error on appeal, as set forth above, regarding the weight given to the opinions provided by the consultive examiners. *See generally Watkins v. Barnhart, supra,* 350 F.3d at 1299 (ruling that it would "not reach the remaining issues raised by [the claimant] because they may be affected by the ALJ's treatment of this case on remand"); *Gilbert v. Astrue*, 231 Fed. App'x 778, 785 (10th Cir. 2007)(unpublished)(noting that "[i]n light of the remand of this case, we do not reach the remainder of [the claimant's] claims on appeal").

ACCORDINGLY, for the foregoing reasons, I REVERSE the final order and REMAND for further proceedings consistent with this opinion.

Dated: February 9, 2023 in Denver, Colorado.

BY THE COURT:

s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE